UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ROBERT CROWDER, JR.,

    Plaintiff,

v.

DAVE YOST, *et al.*,

    Defendants.

Case No.: 3:21-cv-103

District Judge Michael J. Newman

---

**ORDER: (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS (DOC. NOS. 7, 8, 9, 15, 17, 20, 25, 26) AND (2) TERMINATING THIS CASE ON THE COURT'S DOCKET**

---

This case is presently before the Court on the motions to dismiss filed by Defendant Mathias H. Heck, Jr.; Defendants Randy Dupree, Jeremy Fischer, and Jason Holdren; Defendant Attorney General Dave Yost; Defendant Johnson & Johnson; Defendant McKinsey Corporation; Defendant Judge Robert Peeler; and Defendant Derek Faulkner. Doc. Nos. 7, 8, 9, 15, 17, 20, 25, 26. *Pro se* Plaintiff filed a memorandum in opposition. Doc. No. 32. The Court has considered the foregoing, and these motions are now ripe for review.

**I.**

Plaintiff's *pro se* complaint[1] alleges[2]:

> They have an elaborate human trafficking ring going on they are using legislation and the power to prosecute as a way to embezzle millions. They are accomplishing this with a settlement that they received from Mckinsey and Johnson & Johnson. After receiving the settlement they are then putting legislation into effect through chapter 169 of the ohio revised code that will bar the beneficiaries of that money through an amendment that Larry Horseback pushed through to legislators. So they then don't put the party on notice of the settlement so that they can then take their settlement. Essential violating ohio

---

[1] The Court questions whether this complaint would have survived scrutiny under 28 U.S.C. § 1915(e)(2), but Plaintiff paid the filing fee, so we do not answer that question here. Doc. No. 3.
[2] All quotations taken from Plaintiff's complaint have been left unaltered.

> citizens right to due process and utilizing this to embezzle money through business to business exemptions.

Doc. No. 1 at PageID 4. Regarding the relief requested, Plaintiff states:

> The relief requested is that the attorney general and all state and county prosecutors need to stop the malicious prosecution of the drug offenders in ohio. The reason for the half of prosecution is because attorney general and all prosecutor's have an unlawful interest in the prosecution. Evidence of the unlawful interest is the prosecutor's violation of defendants rights to be put on notice of a settlement in accordance with chapter 169 of the ohio revised code. They took this civil rights violation further by covering violation with adjustment to legislation which takes effect April 12, 2021. Why is the attorney general and his delegates not notifying beneficiaries of this settlement? Why are the not holding up there fiduciary duty? It can be argued that service of notice was met when they put in news paper. This would be valid if attorney general and delegates did not have infractions against citizens.

Doc. No. 1 at PageID 6. Defendants seek to dismiss Plaintiff's complaint for a number of reasons, including, but not limited to, failure to state a claim, lack of standing, and lack of personal jurisdiction. Doc. Nos. 7, 8, 9, 15, 17, 20, 25, 26.

## II.

At the motion to dismiss stage, the Court must accept the non-moving party's factual allegations as true and construe the complaint in the light most favorable to the non-moving party. *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). A motion to dismiss filed pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)).

While *pro se* parties must satisfy basic pleading requirements, *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989), their pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "even a *pro se* complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ogle v. Columbia Gas Transmission, LLC,* 513 F. App'x 520, 522 (6th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678).

**III.**

Defendants Yost, Holdren, Dupree, Fischer, Heck, Peeler, Faulkner, McKinsey Corporation, and Johnson & Johnson each move to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state an actionable claim. Doc. Nos. 7, 8, 9, 15, 17, 20, 25, 26.

3

### A. Immunity

Defendants Heck, Holdren, Dupree, Fisher, Yost, Peeler, and Faulkner each assert that Plaintiff's claims are barred by various immunity provisions. Doc. Nos. 7, 8, 9, 25, 26. Defendants Heck, Holdren, Dupree, Fisher, and Faulkner each assert that Plaintiff's claims are barred by absolute prosecutorial immunity, or, in the alternative, qualified immunity. Defendant Yost asserts that Eleventh Amendment immunity bars Plaintiff's claims against him. Defendant Judge Peeler argues that absolute judicial immunity shields him from Plaintiff's claims. While Plaintiff responds to the arguments regarding qualified immunity, Plaintiff does not specifically respond to the claims regarding prosecutorial immunity, judicial immunity, and Eleventh Amendment immunity. Doc. No. 32-2. The Court will address each of these arguments in turn.

### 1. Prosecutorial Immunity

Prosecutorial immunity bars claims against prosecutors for performing their prosecutorial functions. *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). "Prosecutors are entitled to absolute immunity for conduct 'intimately associated with the judicial phase of the criminal process.'" *Manetta v. Macomb Cnty. Enforcement Team*, 141 F.3d 270, 274 (6th Cir. 1998) (quoting *Imbler*, 424 U.S. at 430). Prosecutorial immunity includes a county prosecutor's initiation of a prosecution and presentation of the State's case at trial. *Imbler*, 424 U.S. at 431; *see also Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997). Such "absolute prosecutorial immunity is not defeated by a showing that a prosecutor acted wrongfully or even maliciously." *Lomaz v. Hennosy*, 151 F.3d 493, 498 n.7 (6th Cir. 1998) (citing *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989)).

Plaintiff's complaint alleges that "the attorney general and all state and county prosecutors need to stop the malicious prosecution of the drug offenders in ohio." Doc. No. 1 at PageID 6. He additionally asserts that "[t]he reason for the halt of prosecution is because attorney general and all prosecutor's have an unlawful interest in prosecution." *Id*. Plaintiff requests to know why the

4

Attorney General and his delegates are not notifying certain unidentified beneficiaries of the alleged settlement he briefly mentions in his complaint. *Id*.

Defendant Heck serves as the Montgomery County Prosecutor. Doc. No. 7 at PageID 34. He asserts that to the extent that Plaintiff brings these claims in relation to his position as the Montgomery County Prosecutor, and in relation to his role in prosecuting drug offenders, Defendant Heck is entitled to absolute immunity. *Id*.

Defendant Holdren is the elected Prosecuting Attorney of Gallia County, Ohio. Doc. No. 8 at PageID 45. Defendants Dupree and Fisher are assistant Gallia County prosecutors. *Id*. Defendants Holdren, Dupree, and Fisher note that Plaintiff does not plead any personal involvement of these defendants and that these defendants are not mentioned outside of the case caption. *Id*. Plaintiff's complaint focuses on the "power to prosecute" and "malicious prosecution" of "drug offenders." *Id*. Defendants Holdren, Dupree, and Fisher assert that because Plaintiff's complaint is based on their alleged unlawful initiation of lawsuits in their prosecutorial roles, they are entitled to absolute prosecutorial immunity. *Id*.

Finally, Defendant Faulkner similarly argues that to the extent Plaintiff brings these causes of action against him in his capacity as a Warren County Assistant Prosecutor, for his role in prosecuting drug offenders, he is entitled to absolute immunity. Doc. No. 26 at PageID 113.

Plaintiff's memorandum in opposition does not address these arguments. While Plaintiff refers to "defendants counterclaims" of immunity, he does not provide any argument that specifically addresses prosecutorial immunity. *See generally* Doc. No. 32-3. Thus, Defendants' arguments are unrefuted. Furthermore, Plaintiff's assertions that -- "the attorney general and all state and county prosecutors need to stop the malicious prosecution of the drug offenders in ohio" and that "[t]he reason for the halt of prosecution is because attorney general and all prosecutor's

5

have an unlawful interest in prosecution" -- were directly related to the Defendants' role in initiating and presenting cases. Doc. No. 1 at PageID 6. Because prosecutorial immunity bars claims related to the initiation and presentation of cases, Plaintiff's claims are barred by absolute prosecutorial immunity. *Imbler*, 424 U.S. at 431.

Additionally, each of these Defendants assert that if the claims are not barred by absolute prosecutorial immunity, then the claims are barred by qualified immunity. Doc. Nos. 7, 8, 26. As the Court finds that prosecutorial immunity bars the claims against Defendants Heck, Holdren, Dupree, Fisher, and Faulkner, there is no need to reach the argument that the claims are also barred by qualified immunity.

### 2. Eleventh Amendment Immunity

Plaintiff brings a claim against Ohio Attorney General Dave Yost based on the same alleged malicious prosecution of certain drug offenders. Doc. No. 1. In response, Attorney General Yost argues that Plaintiff's official capacity claims against him are barred by the Eleventh Amendment. Doc. No. 9 at PageID 51.

The Eleventh Amendment expressly provides that federal courts have no jurisdiction over "any suit in law or equity" filed "against one of the United States." U.S. Const. amend. XI. This sovereign immunity also extends to state officials sued in their official capacities. *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office … As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). "Generally, plaintiffs must designate in which capacity they are suing defendants; if not, by operation of law, defendants are deemed sued in their official capacities." *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999). In this case, Plaintiff refers to

6

Defendant Yost as "attorney general" in his Complaint. Doc. No. 1 at PageID 6. Thus, the Court construes this action as one against Defendant Yost in his official capacity.

The United States Supreme Court has recognized a narrow exception to Eleventh Amendment sovereign immunity for lawsuits against government officials in their official capacities if a plaintiff seeks only non-monetary relief. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908). The *Ex Parte Young* exception permits a plaintiff suing a defendant in their official capacity to "seek prospective relief to end a continuing violation of federal law." *Doe v. Wright State Univ.*, No. 3:16-cv-469, 2017 WL 3671240, at *4 (S.D. Ohio Aug. 24, 2017) (citing *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2014)). However, a plaintiff cannot use the *Ex Parte Young* exception to seek relief that is retrospective. *See Diaz* 703 F.3d at 965.

For the *Ex Parte Young* exception to apply, Plaintiff must also include sufficient allegations describing the "connection" between the enforcement by the government official and the underlying unconstitutional act. *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) ("[S]uch officer must have some connection with the enforcement of the act, or else it is merely making ... the state a party" (quoting *Young*, 209 U.S. at 157)). "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Id.* at 1416 (citations omitted). The *Ex Parte Young* exception "requires more than a bare connection to administering a statute" and does not apply to state officials who lack a "special relation to the particular statute" or "[are] not expressly directed to see its enforcement." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (quoting *Young*, 209 U.S. at 157).

In this case, the *Ex Parte Young* exception does not apply. Plaintiff does not allege any direct connection between the Ohio Attorney General's implementation of an unknown

7

"amendment" to Ohio Rev. Code Chapter 69 and a violation of Plaintiff's constitutional rights. *Children's Healthcare is a Legal Duty*, 92 F.3d at 1415.  The Ohio Attorney General is not directly connected to legislative amendments or to distribution of settlement money from lawsuits, thus, Plaintiff fails to state a sufficient connection to any statute to trigger the *Ex Parte Young* exception. *See Young*, 209 U.S. at 157.  Attorney General Dave Yost is entitled to Eleventh Amendment immunity on Plaintiff's claims.

### 3. Judicial Immunity

Judge Peeler moves to dismiss Plaintiff's complaint, asserting that absolute judicial immunity precludes claims against him for injunctive relief.  Doc. No. 25 at PageID 104-05. Plaintiff does not mention Judge Peeler by name in the complaint, so it is unclear what relief Plaintiff requests from him. More generally, however, Plaintiff appears to seek injunctive relief, as he requests that the Attorney General and county prosecutors stop the "malicious prosecution" of drug offenders in Ohio. Doc. No. 1 at PageID 6.  Regardless of the type of relief sought, absolute judicial immunity shields Judge Peeler from Plaintiff's claims.

"It is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004). To the extent the Court construes Plaintiff's complaint as one arising under 42 U.S.C. § 1983, state judges, like Judge Peeler, enjoy absolute immunity from liability under 42 U.S.C. § 1983. *Id.* Absolute immunity protects judges acting in their judicial capacity even where a judge acts corruptly or with malice. *Id.*; *see also Mireles v. Waco,* 502 U.S. 9, 11 (1991).

Judicial immunity can be overcome in only two circumstances: (1) a judge is not immune from liability for nonjudicial actions (i.e., actions not taken in the judge's judicial capacity); and (2) a judge is not immune for actions taken in the complete absence of all jurisdiction. *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012) (citing *Mireles*, 502 U.S. at 11-12). While the cause

8

of action Plaintiff brings against Judge Peeler is not entirely clear from his complaint, Plaintiff refers to a settlement, malicious prosecution, and distribution of funding to beneficiaries. Doc. No. 1 at PageID 6. This characterization suggests that the cause of action stems from Judge Peeler's judicial actions as they pertain to criminal prosecutions in his courtroom or some type of settlement he approved in his judicial capacity. Additionally, Plaintiff does not allege that Judge Peeler lacked jurisdiction to decide any particular case. As Plaintiff does not allege facts that, when accepted as true, show either of the exceptions to judicial immunity apply, Judge Peeler is entitled to absolute judicial immunity from Plaintiff's claims. *Cf. Schorle v. City of Greenhills*, 524 F. Supp. 821, 828 (S.D. Ohio 1981), *abrogated on other grounds by Vodila v. Clelland*, 836 F.2d 231, 235 (denying motion to dismiss on grounds of judicial immunity after finding that a mayor serving as judicial officer in mayoral court acted without any jurisdiction).

### B.  Plausibility Standard

Defendants assert that Plaintiff's complaint fails to state an actionable claim. Defendants contend that Plaintiff's complaint is unsupported, utilizes formulaic labels and conclusions, and does not contain sufficient factual content to make out any legal cause of action. Doc. Nos. 7, 8, 9, 15, 17, 20, 25, 26. Plaintiff does not specifically respond to these arguments. Doc. No. 32-3.

Allegations set forth in a pleading "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint must contain "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (citation and internal quotation marks omitted). Without the clear expression of valid, cognizable legal theory, a complaint fails to put defendants on notice of the claims against them. *Pethel v. Tenn. Dep't of Child. Servs.*, No. 3:10-CV-469, 2020 WL 6827791, at *2 (E.D. Tenn. Nov. 20, 2020).

While *pro se* pleadings are to be "liberally construed," they must still satisfy basic pleading requirements. *Wells*, 891 F.2d at 594. The Court is "not required to conjure up allegations not pleaded or guess at the nature of an argument." *Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012); *Bender v. Dep't of Veterans Affairs*, No. 3:20-cv-441, 2021 WL 1087365, at *1 n. 1 (S.D. Ohio Mar. 22, 2021). While a *pro se* plaintiff "is not required to recite chapter and verse of the statute upon which he relies, he must provide the court and the defendant with sufficient information about the basis for his claim to satisfy federal notice pleading requirements." *Hawkins v. Youngstown Mun. Ct.*, No. 4:12-CV-1029, 2012 WL 4050167, at *2 (N.D. Ohio Sept. 13, 2012).

The Court has conducted an extensive and careful review of the complaint, accepting its factual allegations as true and construing it in the light most favorable to Plaintiff. *Hill*, 409 F.3d at 716. However, the Court finds the complaint deficient in many areas due to the vagueness in which Plaintiff alleges claims against the many Defendants. Defendants are largely left to guess about what specific claims Plaintiff seeks to raise. However, noting that "appropriate liberal construction requires active interpretation in some cases to construe a pro se" pleading, *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985), the Court has identified and will address several potential claims that Plaintiff seems to assert.

The first two sentences of Plaintiff's complaint assert "they have an elaborate human trafficking ring going on they are using legislation and the power to prosecute as a way to embezzle millions. They are accomplishing this with a settlement that they received from Mckinsey and Johnson & Johnson." Doc. No. 1 at PageID 4. Plaintiff continues, "[a]fter receiving the settlement they are then putting legislation into effect through chapter 169 of the ohio revised code that will bar the beneficiaries of that money through an amendment that Larry Horseback pushed through

10

to legislators." *Id*. Plaintiff argues that "they" don't put the beneficiaries on notice of this settlement in order to take money from the settlement. *Id*.

While it is not entirely clear who "they" are, the Court will assume this refers to all Defendants. Liberally construed, this claim could be an allegation that Defendants were involved in a civil conspiracy under 42 U.S.C. § 1983 to engage in human trafficking and embezzlement.

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). While there need not be an express agreement, Plaintiff must establish "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id*. at 944. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Plaintiff's complaint fails to plausibly establish these elements in the instant case. The complaint fails to plead facts showing the existence of a "single plan." *See Hooks*, 771 F.2d at 944. Plaintiff makes only conclusory allegations that Defendants conspired to engage in human trafficking, to use the proceeds of an unknown settlement to embezzle money, and to rely on an unnamed piece of legislation to enable Defendants to embezzle this money. Doc. No. 1 at PageID 4. Plaintiff does not put forth factual allegations that would support the conclusory statements that all Defendants conspired with one another. *Trans Rail Am., Inc. v. Hubbard Twp.*, 478 F. App'x 986, 988 (6th Cir. 2012); *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). Because conclusory statements of a conspiracy are insufficient, Plaintiff's complaint does not state a plausible claim for civil conspiracy. *Trans Rail*, 478 F. App'x at 988.

Next, Plaintiff alleges that the previously discussed actions of Defendants are "violating ohio citizens right to due process and utilizing this to embezzle money through business to business exemptions." Doc. No. 1 at PageID 4. Liberally construed, the Court interprets this to be a 42 U.S.C. § 1983 claim for violation of due process under the Fourteenth Amendment.

In order to state a claim under § 1983, a plaintiff must: (1) allege the violation of a right secured by the Constitution and law of the United States; and (2) show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1991) (citations omitted). The Court assumes that Plaintiff brings these claims against Defendants in both their official and individual capacities.

"[A] section 1983 action against [an official] in his or her official capacity is treated as an action against the [public] entity itself." *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Thus, any official capacity claims Plaintiff brings against Defendants are, in actuality, claims against Defendants' associated entities including: the State of Ohio (Defendant Yost); Gallia County (Defendants Holdren, Dupree, and Fisher); and Montgomery County (Defendant Heck).

As discussed *supra* Part.III.A.2, any official capacity claim against Attorney General Yost and, in turn, the State of Ohio, is barred by sovereign immunity. *Maben*, 887 F.3d at 270. On the other hand, local government entities, such as Gallia County and Montgomery County, are considered persons and "may be sued for constitutional deprivations." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, these entities cannot be held liable under § 1983 for the acts of employees or officials on a *respondeat superior* theory. *Id*. at 693. Instead, an official policy or custom must be the "moving force" behind the alleged constitutional deprivation." *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). To demonstrate *Monell* liability, a plaintiff

12

must: (1) identify the policy or custom; (2) connect the policy to the governmental entity; and (3) show injury of a constitutional magnitude incurred because of that policy's execution. *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (internal citations omitted).

Here, Plaintiff fails to allege the existence of a custom or policy that resulted in his alleged constitutional injuries. *See* Doc. No. 1. Thus, any *Monell* claims against Gallia and Montgomery County fail and are dismissed.

As to the claims against Defendants Yost, Holdren, Dupree, Fischer, Heck, Peeler, and Faulkner in their individual capacities, as previously discussed *supra* Part.III.A., each of these Defendants are immune from individual liability based on either Eleventh Amendment immunity, absolute prosecutorial immunity, or absolute judicial immunity.

Finally, to the extent that Plaintiff asserts a due process claim against McKinsey Corporation and Johnson & Johnson, this claim also fails. McKinsey Corporation and Johnson & Johnson are private corporations and are not state actors under § 1983. A private party's actions can constitute "state action" under the Fourteenth Amendment if that party's actions may be "fairly attributable to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Only where "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 676 (6th Cir. 2018) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). A plaintiff must plead -- through specific factual details in the complaint -- that the requisite nexus exists between the state and the private actor. *Id*. at 677. Plaintiff fails to do so.

McKinsey Corporation and Johnson & Johnson are only mentioned in one sentence in Plaintiff's "Statement of Claim" where he alleges that Defendants are "embezzle[ing] billions"

through a settlement involving these two Defendants. Doc. No. 1 at PageID 4. This one sentence is insufficient to allege a close nexus between the state and either McKinsey Corporation or Johnson & Johnson. Plaintiff also fails to identify what process was due, what liberty or property was deprived, or how his rights were infringed personally. *Siefert v. Hamilton Cty.*, 951 F.3d 753, 762 (6th Cir. 2020) ("To sue under [the due process] clause, the [plaintiffs] must have a liberty or property interest that triggers the process requirement, and then they must show they received insufficient process."). Thus, any due process claim against McKinsey Corporation and Johnson & Johnson must be dismissed.

Because the Court is unable to identify any plausible claim in Plaintiff's complaint, Defendants Yost, Holdren, Dupree, Fischer, Heck, Peeler, Faulkner, McKinsey Corporation, and Johnson & Johnson's motions to dismiss under Fed. Civ. P. 12(b)(6) for failure to state an actionable claim are **GRANTED**. Doc. Nos. 7, 8, 9, 15, 17, 20, 25, 26.

**IV.**

For the foregoing reasons, the Court **GRANTS** the motions to dismiss filed by Defendants Yost, Holdren, Dupree, Fischer, Heck, Peeler, Faulkner, McKinsey Corporation, and Johnson & Johnson. Doc. Nos. 7, 8, 9, 15, 17, 20, 25, 26. This case is **TERMINATED** on the Court's docket.

**IT IS SO ORDERED.**

Date:   September 9, 2021                         s/Michael J. Newman
                                                                                    Hon. Michael J. Newman
                                                                                    United States District Judge